UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:10-CR-63 |
| | ) |
| QWINDEL JEROME PAGE | ) |

**REPORT AND RECOMMENDATION**

Defendant has filed a motion to suppress evidence that resulted from his arrest on November 17, 2009. (Doc. 27). This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on October 22, 2012.

Much of the testimony was irrelevant, or marginally relevant, to the legal issues raised by the motion to suppress. The truly relevant facts are as follows:

(1) In 2009, defendant had been identified as a suspect in a drug conspiracy which had ties to Detroit, Michigan.

(2) The drug conspiracy, including defendant's involvement therein, was investigated by the Second Judicial Drug Task Force.

(3) A confidential informant had reported to agents of the Drug Task Force that he/she had purchased Oxycodone pills from defendant on multiple occasions.

(4) The confidential informant, under the supervision of agents of the Drug Task Force, arranged to buy Oxycodone pills from the defendant on November 17, 2009. The

transaction was to occur in the Wal-Mart parking lot on Stone Drive in Kingsport.

(5) Multiple police officers and drug agents set up surveillance in and around the agreed-upon situs for the deal.

(6) Defendant unilaterally moved the situs of the transaction to the Waffle House parking lot.

(7) The Drug Task Force agents earlier had run defendant's criminal history and they knew his drivers' license was suspended.

(8) One of the assisting police officers, Sergeant Burk Murray, knew defendant from prior contact. Sergeant Murray saw defendant drive his Mitsubishi automobile into the parking lot of the Waffle House, more or less make a U-turn in that parking lot, and then promptly exit.

(9) Sergeant Murray quickly and easily identified defendant as the driver of that vehicle. Murray and other officers followed defendant to a subdivision or residential area approximately one-fourth mile from the Waffle House.

(10) The tailing officers lost contact with defendant in the residential area for about fifteen seconds. However, they quickly located the Mitsubishi automobile parked in front of 504 Grey Avenue. At that point, defendant was approximately ten feet from his car, and walking toward the house.

(11) Sergeant Murray instructed the defendant to stop. Defendant ignored the instructions and ran quickly towards the house.

(12) The house is owned by a man named Price whose adult daughter, Nikea Price,

was defendant's girlfriend at that time. Defendant and Nikea Price shared a bedroom in the home, apparently on a sporadic basis.

(13) Defendant ran up on the porch of the house and attempted to enter through the front door. The door, however, was locked. At that point, defendant turned as if to jump off the porch. Drug Task Force Director McQueen saw defendant move or flick his right arm in a throwing motion, although he did not actually see anything leave defendant's hand. Sergeant Murray did not see this arm movement. It is stressed that this is not a discrepancy, but simply a matter of one officer observing one thing, and another officer observing another. It should also be recalled that Sergeant Murray at this point was screaming for defendant to stop and lie down, and defendant was not complying.

(14). When defendant refused Murray's instructions to stop and began to run off the porch, Murray physically grabbed him. Defendant resisted, but was subdued by Sergeant Murray. As this was occurring, Director McQueen looked into the yard immediately adjacent to the porch, which would have been the area in which anything thrown by defendant would have landed. In the yard, clearly visible even at a distance, was a clear plastic bag full of Oxycodone pills.

Defendant first argues that there was no probable cause for his stop and arrest. He was seen driving a vehicle, and the officers knew that his drivers license was suspended. Driving a vehicle on a suspended license is a violation of state law, Tenn. Code Ann. § 55-50-504. Was the officers' attempt to initially stop defendant based on a violation of the foregoing statute a pretext to continue their investigation into his drug dealing? Of course

3

it was, which is completely beside the point. So long as the officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not unlawful even if the "true" purpose is drug interdiction, and there is no violation of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993).

The discovery of the baggie of pills in the yard of Mr. Price's residence, and its seizure by the officers, does not implicate the Fourth Amendment at all. Defendant argues that since no officer can testify that he saw defendant throw those pills into the yard, no evidence of the pills should be introduced. That, however, is a question for the jury at trial. There certainly is enough circumstantial evidence to connect those pills to defendant, and the jury would be warranted in finding that the pills belonged to him. Certainly the lack of any direct evidence that the pills were in defendant's possession prior to their discovery is no basis to suppress evidence thereof.

Moreover, since defendant at the very least is implicitly denying any knowledge of those pills, he has no standing to seek their suppression in the first instance.

Defendant also complains that the officers searched the house, specifically Nikea Price's bedroom, and found considerable contraband therein. He argues that this search exceeded the scope of a search incident to his arrest.

To be sure, if the search of the bedroom was an incident to defendant's arrest, it may have gone too far. But it was not an incident to defendant's arrest. Drug Task Force Director McQueen asked permission of the owner, Mr. Price, to search the house. Additionally, he

4

asked Price if he (Price) had to obtain permission of his daughter or defendant to enter the daughter's bedroom. Price stated that he never asked permission, and he freely entered the bedroom when and as he wished, never asking permission of his daughter or defendant to do so. Mr. Price gave his consent to search. Based upon the representations Mr. Price made about his perceived authority over all areas of that house and Price's consent, the officers searched Nikea Price's bedroom, finding considerable evidence of drug trafficking therein.

It has long been recognized that a consent to a search is a valid exception to the Fourth Amendment's requirement for a warrant. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Although defendant did not consent to a search of the room he sporadically shared with Nikea Price, Nikea Price's father did; a third-party with apparent authority over property or premises may validly consent to its search, *United States v. Matlock*, 415 U.S. 164, 170 (1974).

Lastly, defendant argues that any evidence seized from his vehicle after his arrest should be suppressed, because he was far from that vehicle upon his arrest, as a result of which there was no justification for that search.

In its response, the United States advised that it did not intend to introduce any evidence seized from defendant's car, as a result of which this portion of defendant's motion is moot.

For all the foregoing reasons, it is respectfully recommended that defendant's motion

5

to suppress (Doc. 27) be denied.[1]

Respectfully submitted,

 s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).