UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:10-CR-63 |
| ) | |
| QWINDEL JEROME PAGE ) | |

**REPORT AND RECOMMENDATION**

The defendant has filed a "Second Motion to Suppress," (Doc. 28), which has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on October 22, 2012.

On July 23, 2010, defendant was questioned by Special Agent George Linen of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, in Detroit, Michigan. Defendant asserts in his motion that there was no "valid waiver of his right to remain silent," and no waiver of his right to have counsel before interrogation.

The facts are as follows:

In 2009, defendant had been identified as a suspect in a drug conspiracy which had ties to Detroit, Michigan. The drug conspiracy, including defendant's involvement therein, was investigated by the Second Judicial Drug Task Force of Tennessee.

A confidential informant had reported to agents of the Drug Task Force that he/she had purchased Oxycodone pills from defendant on multiple occasions. The confidential informant, under the supervision of agents of the Drug Task Force, arranged to buy

Oxycodone pills from the defendant on November 17, 2009. The transaction was to occur in the Wal-Mart parking lot on Stone Drive in Kingsport. Multiple police officers and drug agents set up surveillance in and around the agreed-upon situs for the deal.

The Drug Task Force agents earlier had run defendant's criminal history and they knew his drivers' license was suspended.

Defendant unilaterally moved the situs of the transaction to the Waffle House parking lot, and the surveilling officers likewise re-located. One of the assisting police officers, Sergeant Burk Murray, knew defendant from prior contact. Sergeant Murray saw defendant drive his Mitsubishi automobile into the parking lot of the Waffle House, more or less make a U-turn in that parking lot, and then promptly exit. Sergeant Murray quickly and easily identified defendant as the driver of that vehicle. Murray and other officers followed defendant to a subdivision or residential area approximately one-fourth mile from the Waffle House. The tailing officers lost contact with defendant in the residential area for about fifteen seconds. However, they quickly located the Mitsubishi automobile parked in front of 504 Grey Avenue. At that point, defendant was approximately ten feet from his car, and walking toward the house. The house is owned by a man named Price whose adult daughter, Nikea Price, was defendant's girlfriend at that time. Defendant and Nikea Price shared a bedroom in the home, apparently on a sporadic basis.

Sergeant Murray instructed the defendant to stop. Defendant ignored Murray's instructions and ran quickly towards the house. He then ran up on the porch of the house and attempted to enter through the front door. The door, however, was locked. At that point,

defendant turned as if to jump off the porch. Drug Task Force Director McQueen saw defendant move or flick his right arm in a throwing motion. When defendant refused Murray's instructions to stop and began to run off the porch, Murray physically grabbed him. Defendant resisted, but was subdued by Sergeant Murray. As this was occurring, Director McQueen looked into the yard immediately adjacent to the porch, which would have been the area in which anything thrown by defendant would have landed. In the yard, clearly visible even at a distance, was a clear plastic bag full of Oxycodone pills.

A subsequent search of the house resulted in the discovery and seizure of drugs, drug paraphernalia, and other incriminating evidence.

As a result of the foregoing, defendant was charged by the State of Tennessee, and he was ultimately allowed release. No one ever stated what became of those state charges. Was he released prior to a trial? Indeed, was he ever tried? Is that case still pending? Regardless, the status or disposition of those state charges are irrelevant. What is currently germane is the fact that defendant was allowed release of some sort following his charge by the State of Tennessee and, while so released, he was arrested by the Michigan authorities for criminal activity in that jurisdiction. Special Agent Linen requested permission of the Michigan state police to question defendant, and he received that permission. Prior to an interview on July 21, 2010, defendant was thoroughly and painstakingly advised of his constitutional rights by Agent Linen, and defendant executed a written waiver of those rights.[1] A Michigan state

---

[1] Ex. 6.

3

officer questioned defendant regarding his criminal activities in the Detroit area, but Special Agent Linen essentially used that time only to tell defendant that federal charges were soon to be filed, that he would be arrested on those charges, and that he would be taken into federal custody.

Two days later, on July 23, 2010, Special Agent Linen again interviewed defendant and, as before, he carefully *Mirandized* defendant. As he did before, defendant executed a written waiver of his right to remain silent and to have counsel present with him; *see*, Document 8. On this occasion, defendant was questioned about the pending federal charges.

According to Special Agent Linen, both interviews with defendant were civil and polite, and there were no threats or promises made to defendant in an effort to induce him to waive his right to remain silent when he otherwise would have not done so.

Defendant makes the interesting argument that Special Agent Linen should have refrained from interviewing defendant on July 23, since he knew that defendant was to be brought before a federal judge within the next several days with respect to the charges pending in this district and that an attorney would be appointed for defendant. Defendant cites no authority for this proposition, and the court knows of none on its own accord. Defendant had been advised of his constitutional right to remain silent on two separate occasions, and on each occasion, he validly waived his right to remain silent and to speak with an attorney before talking further. There was never any coercion of any kind. The fact that defendant was scheduled to appear before a judge a day or two later does not itself preclude an officer from questioning a defendant after that defendant has knowledgeably and

4

Case 2:10-cr-00063-JRG   Document 68   Filed 10/22/12   Page 4 of 5   PageID #: 218

voluntarily waived his right to remain silent. To put it simply, there is no basis to suppress defendant's statements on July 23, 2010, and it is therefore respectfully recommended that defendant's motion to suppress his statements (Doc. 28) be denied.[2]

Respectfully submitted,

     s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).

5

Case 2:10-cr-00063-JRG Document 68 Filed 10/22/12 Page 5 of 5 PageID #: 219